UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NUR SHEIKH-ELMI, | CASE NO. 2:25-cv-00850-JNW |
| Petitioner, | TEMPORARY RESTRAINING ORDER |
| v. | |
| NORTHWEST ICE PROCESSING CENTER, and PAMELA BONDI, | |
| Respondents. | |

## 1. INTRODUCTION

Petitioner Nur Sheikh-Elmi is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center in Tacoma, Washington, and scheduled for removal within two weeks. Dkt. No. 1-1 at 14. Proceeding through his mother and Next Friend, Halima Magan Warsame, Sheikh-Elmi moves for a Temporary Restraining Order staying his removal, among other things, while he appeals the denial of his Temporary Protected Status application to the USCIS Administrative Appeals Office (AAO). Dkt. No. 3. The Government has appeared and updated the Court about where Sheikh-Elmi is to be deported, but it does not address his pending TPS appeal.

TEMPORARY RESTRAINING ORDER - 1

The Court has serious questions going to the merits of Sheikh-Elmi's claims, and the balance of hardships tips sharply in his favor given the imminent threat of removal and the irreparable harm that it poses. So the Court grants temporary relief as explained below to preserve the status quo until both parties can fully present their arguments at a preliminary injunction hearing.

## 2.  BACKGROUND

Sheikh-Elmi, a citizen of Somalia, has been detained at Northwest ICE Processing Center since August 2022. Dkt. No. 3 at 1–2. As a result of his prolonged detention, Sheikh-Elmi experiences severe health issues.[1] Dkt. No. 1-2 ¶ 3. The Immigration Judge found Sheikh-Elmi to be removable to Somalia on March 21, 2023. The removal order became final on December 12, 2023. *See* Dkt. No. 3 at 2.

On July 15, 2024, Sheikh-Elmi, represented by counsel, petitioned for a writ of habeas corpus under 28 U.S.C. § 2241. *Sheikh-Elmi v. Garland et al.*, 2:24-cv-01048-TMC-TLF, (W.D. Wash. Jul. 15, 2024). Sheikh-Elmi alleged that his continued detention violated his due process rights because ICE could not effectuate his removal in the foreseeable future. *Id.* at Dkt. No. 1 at 3. Specifically, Sheikh-Elmi alleged the Somali government would not accept him and thus ICE could not remove him until a time uncertain. *Id.* The Government moved to dismiss Sheikh-Elmi's petition, even though it acknowledged that removal to Somalia was

---

[1] Because the Court must way the interest of the public in transparent rulings against the privacy interests of the individual parties, it allows Sheikh-Elmi's health evaluation to remain under seal and speaks only in generalities about his conditions.

TEMPORARY RESTRAINING ORDER - 2

impossible at the time because Somalia was not issuing travel documents. *Id.* at Dkt. No. 7 at 5. Since the motion to dismiss and response, the parties have filed supplemental briefing and status reports. *Id.* As of April 2025, the Government claims that ICE has requested a new travel document to facilitate Sheikh-Elmi's removal to Somalia. *Id.* at Dkt. No. 29 at 2. On the other hand, Sheikh-Elmi argues that the Somalia government will not issue a travel document because of Sheikh-Elmi's severe health issues. *Id.* at Dkt. No. 31 at 2. The petition and motion to dismiss remain pending. *See id.*

In this case, Warsame, acting on Sheikh-Elmi's behalf, petitions for habeas relief and a stay of Sheikh-Elmi's removal. Warsame states that, on May 3, 2025, ICE Officer D.O. Hubbard informed Sheikh-Elmi that "a flight is scheduled for his removal in two weeks but admitted that he does not know which country [Sheikh-Elmi] will be taken to." Dkt. No. 3 at 1–2. Because ICE "previously attempted to deport [Sheikh-Elmi] to Kenya," Warsame argues ICE is likely trying to do so again given that Somalia will not issue a travel document and ICE has not confirmed the country of removal. *Id.* at 2. The Government counters that the Department of Homeland Security "intends" to remove Sheikh-Elmi to Somalia. Dkt. No. 9 at 1.

Warsame states that Sheikh-Elmi applied for Temporary Protected Status (TPS), which U.S. Citizenship and Immigration Services (USCIS) denied. Dkt. No. 1-1 at 6. Sheikh-Elmi timely appealed the decision to the USCIS Administrative Appeals Office. *Id.* Warsame attests that Sheikh-Elmi's appeal contains "newly discovered material evidence that was not available at the time of his initial TPS application." Dkt. No. 1-1 at 6.

### 3. DISCUSSION

**3.1 Legal standard.**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate '(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20) (numbering added). These four factors—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a showing on all four prongs" is required).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another.

*Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

After considering the record and the applicable legal standard, the Court concludes that a TRO is warranted for the reasons stated below.

**3.2   Next Friend standing.**

To begin, the Court considers whether Warsame may act on Sheikh-Elmi's behalf as his Next Friend.

A third party—next friend—may pursue a habeas petition on behalf of a detained person. *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting [o]n [their] behalf."). But ""[n]ext friend" standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."" *Coal. of Clergy, L., & Professors v. Bush*, 310 F.3d 1153, 1159 (9th Cir. 2002) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990)). A putative next friend must satisfy two elements to establish next-friend standing: (1) the petitioner—person being detained—is "unable to litigate [their] own cause due to mental incapacity, lack of access to court, or other similar disability"; and (2) the next friend "has some significant relationship with, and is truly dedicated to the best interests of, the petitioner." *Id.* at 1159–60 (quoting *Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001)). By "requiring a showing of incompetency and a 'significant relationship' [the court] ensures that 'the litigant asserting only a generalized interest in constitutional governance' does not 'circumvent the

jurisdictional limits of Article III simply by assuming the mantle of "next friend."'" *Naruto v. Slater*, 888 F.3d 418, 422 (9th Cir. 2018) (quoting *Whitmore*, 495 U.S. at 164).

Warsame is Sheikh-Elmi's mother. Dkt. No. 1-2 ¶ 1. Thus, she easily satisfies the "significant relationship" requirement. *See Vargas v. Lambert*, 159 F.3d 1161, 1168 (9th Cir. 1998) ("There is essentially a per se rule that a parent meets this [significant relationship] prong of the next friend standing test.").

As for Sheikh-Elmi's competency, Warsame attests that her son has "severe psychiatric conditions." Dkt. No. 1-2 ¶ 3. She states that, due to his mental conditions, Sheikh-Elmi cannot understand or participate meaningfully in legal proceedings. *Id.* In support of her statements, Warsame submits a sealed document styled as a "Mental Status Examination" completed by a board-certified Advanced Practice Psychiatric Mental Health Nurse Practitioner. Dkt. No. 2. The practitioner confirms Sheikh-Elmi's severe health conditions. *Id.*

At this stage of the proceeding, the Court must only make a preliminary finding. *See Vargas*, 159 F.3d at 1171 (holding that a prisoner's mother had standing to pursue a stay of execution to permit the state court to conduct a current competency hearing). Warsame provides sufficient evidence to make a preliminary finding of incompetency. Dkt. No. 2 at 2. Specifically, she provides an evaluation (filed under seal), which supports her claims about Sheikh-Elmi's severe health conditions. *Id.* Nothing in the record shows otherwise. Thus, at this early stage, the Court finds Warsame has established Sheikh-Elmi's mental incapacity.

Accordingly, the Court will allow Warsame to proceed on Sheikh-Elmi's behalf only for the TRO and pending Preliminary Injunction motion. Dkt. No. 4.

**3.3    Sheikh-Elmi raises serious questions going to the merits.**

Although he raises other issues, the Court addresses only the merits of Sheikh-Elmi's request for a stay of removal, finding serious questions going to the merits of whether he is removable during the pendency of his TPS appeal. *See Versaterm Inc. v. City of Seattle*, C16-1217-JLR, 2016 WL 4793239, at *5 (W.D. Wash. Sept. 13, 2016) ("Where a party asserts multiple claims, the court need not find that the plaintiff is likely to succeed on the merits of all of the plaintiff's claims to issue a preliminary injunction.").

Temporary Protected Status, or TPS, is a form of humanitarian relief granted to eligible nationals of countries experiencing conditions that make it unsafe or impossible for their citizens to return home. Under 8 U.S.C.A. § 1254a(a)(4), "an alien who establishes a prima facie case of eligibility" for TPS shall not be removed. Although Sheikh-Elmi's TPS application was denied, his appeal is pending before USCIS Administrative Appeals Office.

The parties identify scant case law addressing the effect of a TPS appeal on removal proceedings. Sheikh-Elmi relies primarily on *Salad v. Dep't of Corr.*, in which the district court found that even if the petitioner's "TPS application is denied, he will remain unremovable until the completion of the appeal process." No. 3:25-CV-00029-TMB-KFR, 2025 WL 732305, at *3 (D. Alaska Mar. 7, 2025). But that case offered little analysis on the issue and is not binding on this Court.

TEMPORARY RESTRAINING ORDER - 7

In *San Juan Bonilla v. Ashcroft*, 115 F. App'x 364 (9th Cir. 2004), the Ninth Circuit hear a case brought by a petitioner whose TPS application the Government initially denied, but was pending on appeal. On this posture, the Court found that the petitioner's "stay of removal will remain in effect until his TPS appeal is adjudicated." *Id.* at 365. While this unpublished decision is not precedential, it suggests how the Ninth Circuit might view this issue—especially given the attestation that Sheikh-Elmi's appeal contains "newly discovered material evidence that was not available at the time of his initial TPS application." *See* Dkt. No. 1-1 at 6.

In *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022), the Ninth Circuit explained how 8 U.S.C. § 1252(g) deprives the courts of jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien." *Rauda*, 55 F.4th at 777 (quoting 8 U.S.C. § 1252(g)). Applying Section 1252(g), the court held the district court lacked jurisdiction to stay the petitioner's removal pending the outcome of his motion to reopen his request for relief under the Convention Against Torture. *Id.* at 781. The Ninth Circuit rejected the petitioner's argument that applying Section 1252(g) in this way effectively deprived him of his statutory right to move to reopen because the petitioner "will continue to have access to the process guaranteed to him under the statute even if he is removed." *Id.* at 777.

This case is distinguishable from *Rauda* because Sheikh-Elmi's TPS eligibility includes continuous presence requirements, among other things, making

TEMPORARY RESTRAINING ORDER - 8

removal detrimental to his appeal. *See* 8 C.F.R. § 244.2(b). And serious questions exist, not yet addressed by the parties, about whether Section 1252(g) extends so broadly as to prohibit the Court from staying execution of a removal order even when such a stay is required by the statutory scheme governing the TPS program.

Without the benefit of full adversarial briefing, and given the limited authorities available, the Court concludes Sheikh-Elmi raises serious questions about whether his removal is proper during the pendency of his TPS appeal. The Government had an opportunity to address this issue but failed to do so. *See* Dkt. No. 9. This showing, combined with the balance of hardships discussed below, is sufficient under the Ninth Circuit's sliding scale approach to warrant temporary relief.

**3.4    The remaining *Winter* factors support a TRO.**

The second *Winter* factor—irreparable harm—tips sharply in favor of a TRO. Sheikh-Elmi has severe health issues, which preclude him from understanding and participating in legal proceedings. He will face deportation and family separation absent a TRO. He will also face many more hurdles in the TPS process if removed. These harms are severe, concrete, and cannot be remedied through monetary compensation.

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the Government is a party to a case. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). These factors also tip sharply in Sheikh-Elmi's favor. A TRO would impose little to no prejudice

on the Government because it will simply hold the status quo while the appeal is considered. Meanwhile, absent a TRO, Sheikh-Elmi will face life-changing and irreparable harm.

### 4. CONCLUSION

Accordingly, the Court ORDERS that Defendants and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are immediately enjoined from:

(a) Removing or deporting Sheikh-Elmi from the United States; and

(b) Transferring Sheikh-Elmi from the Northwest ICE Processing Center to any other facility during the pendency of these proceedings.

Unless extended by the Court, this TRO expires 14 days from entry. No security bond is required under Federal Rule of Civil Procedure 65(c) because the Government faces no realistic likelihood of harm from enjoining its conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Finally, Sheikh-Elmi has moved for a preliminary injunction. Dkt. No. 4. The Court ORDERS the Government to respond to the motion by May 16, and that Sheikh-Elmi may file a reply, if any, by May 21.

Dated this 9th day of May, 2025.

Jamal N. Whitehead
United States District Judge